**EASTMAN KODAK STORES, INC.,**
**a Corporation, Appellant,**

**v.**

**Charles W. SUMMERS and Margaret Ann**
**Summers, Respondents.**

**No. 23901.**

Kansas City Court of Appeals.

Missouri.

April 6, 1964.

Harry T. Limerick, Jr., Columbia, for appellant.

Robert C. Smith, Smith & Lewis, Columbia, for respondents.

MAUGHMER, Commissioner.

Plaintiff Eastman Kodak Stores, Inc., began this litigation with a replevin action against defendants for the recovery of photographic equipment which plaintiff had sold to defendants. This equipment originally cost more than $13,000 and there was a balance due of $11,400. Defendants counterclaimed, alleging breach of warranty and asking damages. The replevin action was tried to the Court and terminated in a judgment for plaintiff, from which no appeal has been taken. The counterclaim for damages was tried to a jury, resulting in a verdict and judgment for defendants in the sum of $7,000. The company's appeal is before us for determination.

Eastman declared two points on its appeal and in the following exact phraseology: (1). "Motion for directed verdict by appellant should have been sustained"; (2) "Motion for new trial should have been granted". Under its first point appellant says defendants failed to prove (a) breach of warranty and (b) loss of profit. Under its second point appellant says the Court erred in giving Instructions D–1 and D–3, erred in refusing Instruction P–A and that "one juryman was not qualified".

Plaintiff Eastman Kodak Stores, Inc., was engaged generally in the business of photography and the merchandising of photographic equipment. The defendants Charles W. and Margaret Ann Summers, husband and wife, were operators and owners of the Charles-Mar Studio in Columbia, Missouri. In the spring and summer of 1959, defendants discussed the purchase of a "film processing plant" with Mr. Ross Tunnell, manager of plaintiff's St. Louis store. These negotiations resulted in the purchase by Mr. and Mrs. Summers from Eastman Kodak Stores of a film processing plant with automation equipment at a total cost of more than $13,000.

Mr. Summers testified that Eastman's manager Tunnell told him he would receive technical training in the operation of the equipment and process, but that he received no such training; that he was promised the help of a qualified technician for at least two weeks, but that this expert stayed only two hours. He said Eastman agreed to complete installation and have the plant in operation by September 15, 1959, but installation was not completed until the last of September. Summers said Mr. Christensen, Eastman's field representative, assured him the machine would do top quality work. Columbia is a school town and Eastman's manager Tunnell admitted defendants needed to be in operation early in September, the beginning time of the school year. The technician furnished was Mr. Joseph C. Brunnert, who had commenced this type of work only one month earlier and this job was his first installation.

Mr. Summers described numerous defects and breakdowns attributable to either defective equipment or faulty installation, or both. He testified that the chemical tanks were hooked to the wrong outlets, resulting in brown films being developed, especially for Stephens College, which led to the loss of that valuable account; the electric motor burned out and a replacement was not delivered for several days; the timing device on the printer "broke down", the plant drier and the numbering device which numbered each photograph and also the customers' envelopes broke down numerous times; the picture cutting device was improperly mounted, cut the prints into little pieces and Summers finally got another company to install it properly; the leader belt broke and it took four days to secure a replacement; one of the solenoids was defective, so was the replenishing valve, and as a result it "caught fire". He stated that the "plant had never run right" since it was installed and breakdowns were frequent over the more than two year period which

elapsed from the time of purchase until the commencement of the replevin suit.

Joseph C. "Speedy" Brunnert, Eastman's installing expert, admitted that the "hoses were improperly installed causing contamination of the chemicals"; that they had trouble with the thermostat, the timer on the printer, the cutter; that the motor burned out and the chain drive on the processor did not function properly.

Mr. and Mrs. Summers testified that they lost numerous photo finishing accounts, including Stephens College, Crown Drugs, Campus Town Grocery, Miller's Rexall Store, Barnett's Drugs, Alsop-Turner, and others. They said each of these accounts was lost because of the breakdowns and defects which caused poor processing and unduly delayed service. Numerous representatives of these business customers confirmed the fact that they had taken their business elsewhere for these reasons.

Mrs. Summers was the bookkeeper for the Charles-Mar Studio. She testified from the books and records as to their photo finishing business for 1960, 1961 and 1962 from a financial statement and as follows: For the year 1960, gross receipts $6,513.29, expenses $4,502.06, leaving a profit of $2,011.23. For 1961, gross receipts $1,590.51, expenses $4,848.21, for a loss of $2,257.70. For 1962, gross receipts $841.45, expenses $4,111.00 or a loss of $3,269.55,

Mr. and Mrs. Summers claimed special installation costs of $1,234.84 for electrical work, plumbing, lumber, carpentering, special photo material and telephone toll charges. Their studio apparently held onto a substantial part of their photo finishing business during 1960. In any event, the business was profitable for that year. However, they testified that the breakdowns continued and as a result they were unable to render prompt and efficient service. It was their testimony that their losses incurred in the operation of the photo finishing business for 1961 and 1962 totaled $6,378.70. It was their estimate that reasonable profits

on the volume of business should have reached $4,022.46.

■ It is our belief that the record shows substantial and credible evidence that (1) Eastman warranted the quality of the equipment sold, represented it would be properly and expertly installed and that repairs and replacements would be promptly forthcoming. It might, we think, reasonably be expected that some defects or "bugs" would show up in connection with the installation and operation of an extensive and complicated equipment and process such as this one. However, the extent of defective equipment and the frequency of breakdowns far exceeds any reasonable expectancy. We approve the action of the trial court in submitting the case to the jury and in denying the motion for directed verdict.

■ The evidence set forth in some detail shows substantial damage was sustained by Mr. and Mrs. Summers as a result of this enterprise. Their actual cash outlay for special installation expense, special operating material, telephone toll charges to expedite repairs, and costs for having films processed elsewhere, totaled $1,238.84. Their evidence as to actual losses on their photo finishing business resulting from this defective equipment which in turn resulted in lost accounts, totaled $6,368.70. These two elements of damages, without considering alleged loss of profits, amounted to more than $7,000, the amount of the verdict and judgment. We hold the verdict is not excessive and is supported by the evidence.

■ Appellant complains specifically as to the giving of Instructions D–1 and D–3 and the refusal of the Court to give Instruction P–A. We set out Instruction D–1:

"The Court instructs the jury that if you find and believe from the evidence;

"1. That Eastman Kodak Stores, Inc. orally warranted and represented to Charles W. Summers and Margaret Ann Summers that the photo finishing

equipment mentioned in the evidence was reliable and would do top-quality photo finishing and that in the event that there were any difficulties with such equipment, it would promptly correct these difficulties; and

"2. That these representations and warranties were made to induce the Summers to purchase this equipment; and

"3. That these warranties did induce the Summers to buy the equipment and they would not have bought it except for these warranties; and

"4. That this equipment was not as warranted; that it repeatedly broke down so that the Summers were unable to give prompt and dependable photo finishing service to their customers; and

"5. That the Summers made repeated requests of the Eastman Kodak Stores Inc., to repair the equipment according to their warranties but that such repairs were not promptly made; and

"6. That as a direct result of such equipment not being in the condition warranted and the failure of Eastman Kodak Stores, Inc. to make prompt repairs as warranted, the Summers (were) damaged; then your verdict must be for the counterclaimants Charles W. Summers and Margaret Ann Summers and against Eastman Kodak Stores Inc.".

Appellant says the instruction is defective because it does not require a finding that the respondents properly cared for and "maintained and lubricated" the equipment. The instruction required the jury to find affirmatively, that: (1) Eastman warranted and represented that the equipment was top quality and that the company would promptly correct any defects which developed; (2) that the Summers relied on the warranties; (3) the equipment was not first class but repeatedly broke down and that Eastman did not promptly repair and (4) that

the Summers were damaged. We believe this instruction contains all the essential elements required by the issues as drawn in this case, is supported by the evidence and the Court did not err in giving it.

In Collins v. Rankin Farms, Mo. App., 180 S.W. 1053, 1054, the court said: "Each party is entitled to an affirmative submission of his theories of the case which are justified by the law". If Eastman believed and had some evidence that the breakdowns were caused by Summers's neglect and failure to lubricate or properly maintain the equipment it should have offered an instruction submitting that defense. However, during the trial Eastman neither contended nor offered any evidence that the breakdowns were caused by failure to lubricate or properly care for the equipment by Mr. Summers. Therefore such a defense was not properly submissible to the jury even if offered. There must be evidence presented upon which to base it before a factual defense may be submitted to a jury.

Instruction D-3 on the measure of damages authorized such an award as "will fairly and reasonably compensate them for their losses, if any, which they sustained as a direct result of the breach of warranties * * *".

In Martin v. Kansas City, Missouri, Mo., 340 S.W.2d 645, 650, the measure of damages instruction was phrased this way: " * * * in such a lump sum 'as will reasonably and justly pay or compensate him for the injuries and conditions directly resulting from the negligence of the defendant * * *'". The court approved this general instruction on the measure of damages and commented: "Moreover, defendant, if its counsel desired, had the privilege of tendering an instruction more particularizing or limiting the damages to be allowed by the jury. (citing cases)". We overrule the exception as to Instruction D-3.

Eastman offered and the Court refused to give Instruction P-A. This in-

struction stated simply that if the Summerses "were not engaged in the photo finishing business prior to the purchase of the photo finishing equipment * * * then * * * there is no prior established business from which a loss of profits, if any, can be ascertained and the court instructs the jury to disregard any testimony as to loss of profit that was given in this case". Loss of profit is a proper element of damage under a breach of contract or warranty.

In 25 C.J.S. Damages § 42, pp. 516, 517, the rule is stated this way:

"There may be a recovery for loss of profits shown to be the natural and probable consequence of the act or omission complained of, provided the amount thereof is shown with sufficient certainty.

\* \* \* \* \* \*

"The rule does not apply to uncertainty as to the amount of the profits which would have been derived, but to uncertainties or speculation as to whether the loss of profits was the result of the wrong, and whether any such profits would have been derived at all".

■ New Deal Tire Co. v. Jarratt, Mo. App., 79 S.W.2d 744, is a case where plaintiff's business was organized April 3, 1933 and it received the first defective shipment on April 12, 1933. Recovery of damages was permitted even though plaintiff's business had just started. The court did not err in refusing to give Instruction P–A.

The verdict in this case was entered on January 30, 1963. On or about February 16, 1963, information came to the trial court that one of the jurors, Crutchfield, had in 1924, been duly adjudicated to be a person of unsound mind and had never been restored. On March 1, 1963, the Court, on its own motion, held a hearing and considered the propriety of granting a new trial because of this fact. At this hearing there was testimony to the effect that juror Crutchfield operated a farm, bought and sold livestock, transacted other farm busi-

ness, and appeared to be normal. Dr. V. P. Dryer, the juror's physician for many years, said he had treated Crutchfield for epilepsy but believed he was of sound mind. The court refused to grant a new trial on account of juror Crutchfield. We cite some Missouri statutes which are pertinent to the question:

Section 494.010, V.A.M.S., Qualification of jurors.

"Every juror, grand and petit, shall be a citizen of the state, * * * sober and intelligent, of good reputation, over twenty-one years of age and otherwise qualified".

Section 494.050, V.A.M.S., Exceptions to qualifications, when taken, states:

"No exception to a juror on account of his citizenship, nonresidence, state or age or other legal disability shall be allowed after the jury is sworn".

The verdict in this case was signed by 10 jurors. Nine jurors (excluding Crutchfield) could have returned a verdict, but authorities are numerous that a litigant is entitled not to just nine, but to a jury of twelve impartial qualified jurors. Moore v. Middlewest Freightways, Inc., Mo., 266 S.W.2d 578, 586. Technically, under the statute (494.050, supra) it was too late after the jury was sworn, to except to the juror's "* * * other legal disability * * *".

In State v. Barr, Mo.App., 20 S.W.2d 599, 600, the court allowed the verdict to stand where one juror was a minor and counsels' voir dire inquiries had not revealed this disqualification.

In Allen et ux. v. Chicago, R. I. & P. Ry. Co. et al., 327 Mo. 526, 37 S.W.2d 607, 609, where two of the jurors could neither read nor write, the court said:

"We have uniformly ruled that the qualification of a juror is a matter of exception, and where, as in this case, a party fails to question a juror as to his qualifications, when the juror is examined on his voir dire, and does not challenge such juror for cause, an ob-

jection to such juror made after the jury is sworn comes too late".

■ Courts are very reluctant to set aside jury verdicts when it later develops that one juror did not possess all of the technical qualifications. Verdicts will not be set aside on this account unless it appears that the losing parties' rights were thereby impaired and substantial justice requires such action. If the rule were otherwise, verdicts might be ambushed and overthrown —sometimes willfully and by lying in wait— even in those cases where it clearly appears that a fair trial was had and no litigants' rights were really prejudiced.

■ Wide discretion is vested in the trial court in determining whether or not a new trial should be granted in a case where a juror is probably not technically qualified or there is some question if he made a complete and frank disclosure on voir dire. Massman v. Kansas City Public Service Co., Mo., 119 S.W.2d 833, 838. We rule that the trial court did not abuse its discretion in denying a new trial because of the disclosures as to the juror Crutchfield.

■ Respondents have moved that the appeal herein be dismissed because appellant did not file its transcript within the time authorized. (Rules 82.18 and 82.19, Rules of Civil Procedure, V.A.M.R.) and because appellant's brief contains abstract statements of law rather than a specification of the errors claimed as required by Rule 83.05. The motions by respondents under the facts of this case are not frivolous motions. Appellant is not in strict compliance with the rules, especially as to timeliness in the filing of the transcript. However, in the exercise of our appellate discretion, we have determined to rule this case upon the merits, rather than to consider and determine it upon the compliance or noncompliance with the prerequisite requirements for appellate review as contained in the rules cited above.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.