**CROWN CORK & SEAL COMPANY, Inc., Plaintiff-Appellee,**

v.

**HIRES BOTTLING COMPANY OF CHICAGO, Defendant-Appellant.**

**No. 15660.**

United States Court of Appeals Seventh Circuit.

Jan. 11, 1967.

Arthur Abraham, Chicago, Ill., for appellant.

Howard M. Turner, Julian I. Silvertrust, Carrol A. Teller, Teller, Levit & Silvertrust, Chicago, Ill., for appellee.

Before SCHNACKENBERG, CASTLE and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Plaintiff Crown Cork and Seal Company, Inc. brought this action [1] to recover the balance due on promissory notes for the purchase price of certain bottling equipment. Defendant Hires Bottling Company of Chicago pleaded fraudulent misrepresentation. Plaintiff moved for summary judgment after taking depositions of several officers and employees of Hires. The district court granted judgment for the plaintiff, and defendant appealed.

In August, 1962, Hires became interested in buying the assets and moving into the plant of the bankrupt Chicago Beverage Company. The CEM bottling equipment with which this action is concerned was on the premises and in use by the trustee, having been purchased by the bankrupt from Crown on a conditional sales contract. $34,000 was still owed. Crown petitioned for reclamation and obtained an order for turnover of possession. Hires purchased the other assets of the bankrupt August 18 and bought the CEM equipment August 28, giving Crown the notes in suit.

The misrepresentation claimed by Hires is alleged to have been made by Mr. Edward Stern, a vice president of Crown. Crown contends that the alleged statements were no more than an expression of opinion as to the merits of the equipment, and therefore could not be fraud under the controlling law, that of Illinois. Crown also contends that the

1. Jurisdiction is founded on diversity.

deposition established, as a matter of law, that Hires had no right to rely upon Stern's statements concerning the equipment because of other information readily available to it.

Arthur Holland was president of Hires. He knew Stern because of past business relationship. After he learned that the CEM equipment would not be sold by the trustee in bankruptcy, he telephoned Stern and asked for information about the equipment and how it could be bought.

Holland testified:

"I asked him about this equipment. He told me that it was—this would be a very fine move if we could make it because this was first class equipment, that he knew that we were getting excellent product on the south side with very old equipment, and that a move of this kind would give us larger facilities and certainly newer and much better equipment in terms of this uni-blend with which we had no experience at all. This is a newer way of bottling a product. * * *"

About two months after Hires began to use the equipment, Hires' products of several types began to be returned as spoiled. They contained sediment, had a bad taste, and a high bacterial count. Efforts to correct the situation have been unsuccessful, and the record suggests that the same model of equipment is giving similar trouble elsewhere in the country.

Crown relies on the proposition that "the law does not hold parties responsible for the truth or falsity of expressions of opinion as to the merits of an article offered for sale, or as to its value, where no special confidence is reposed." [2]

■■ It is true that the expressions attributed to Stern were in the phraseology characteristic of opinion: "fine move," "first-class," "better equipment." If the deficiency complained of were merely performance which compared un-

favorably with other machines with respect to efficiency, economy, or quality of product, the rule that statements of opinion are not actionable would clearly apply. But the alleged defect here is that the equipment is incapable of producing Hires' wares in a condition fit to be marketed. When Stern, who was allegedly familiar with Hires' business, made such statements in response to Holland's question, they implied, at least, an assertion of fact that the equipment was capable of producing Hires' goods in marketable condition.

The supreme court of Illinois has said: "Whether language used is a matter of opinion or a positive averment of a fact depends largely upon the facts of each case." [3] We are not prepared to say that as a matter of law, Stern's statement was not actionable in these circumstances.

Mr. Irving Goldner had been president of Chicago Beverage Company and knew that that company had problems with the CEM equipment. The difficulties were similar to those presently suffered by Hires. They arise in producing types of beverages which he referred to as "sensitive." Hires employed Mr. Goldner, beginning August 20, 1962, eight days before Hires bought the CEM equipment, but a considerable period after Holland's conversation with Stern. Crown points out that Holland might have asked Goldner about the equipment on several occasions before Goldner was employed, and surely could have asked him during the eight days thereafter. Holland explained he didn't ask Goldner about trouble with the CEM equipment because "I had been pretty well conditioned by my conversation with Mr. Stern. It didn't occur to me there could be anything wrong with it."

■ Crown contends that since the information possessed by Goldner was available to Hires, Hires, as a matter of law, had no right to rely on representations by Stern. The reasonableness of

---

2. Fuchs & Lang Mfg. Co. v. R. J. Kittredge & Co. (1909), 242 Ill. 88, 95, 89 N.E. 723, 725.

3. Buttitta v. Lawrence (1931), 346 Ill. 164, 172–173, 178 N.E. 390, 393.

Holland's failure to question Goldner under the circumstances seems to us to lie in the area of conflicting inferences which may legitimately be drawn. We consider summary judgment inappropriate.

The judment appealed from is reversed and the cause remanded.