443 F.Supp. 32 (1977)
Hershel RICH, Plaintiff,
v.
EASTMAN KODAK COMPANY, Defendant.
No. 75-841C(3).
United States District Court, E. D. Missouri, E. D.
April 26, 1977.
On Motion For Summary Judgment December 20, 1977.
*33 P. Terence Crebs, Gallop, Johnson, Godiner, Morganstern & Crebs, St. Louis, Mo., for plaintiff.
John R. McFarland, Coburn, Croft, Shepherd & Herzog, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
This matter is before the Court upon defendant's motion for summary judgments in its favor on plaintiff's claim and defendant's counterclaim. Color Unlimited, Inc. brought this suit, pursuant to 28 U.S.C. § 1332, seeking to recover damages for alleged misrepresentations. On December 27, 1976, Hershel Rich, the sole shareholder of Color Unlimited, Inc., was substituted in its stead. Plaintiff owned and operated a professional color laboratory and purchased from defendant a video color negative analyzer (VCNA) and related equipment, and printers and related equipment. The VCNA was purchased from a third party, upon the condition that defendant would assess its condition and utility and provide all necessary maintenance and repair service. Plaintiff alleges that in reliance upon defendant's advertising and meetings and discussions with defendant, plaintiff purchased only products of defendant's manufacture and used only defendant's maintenance and repair service. Plaintiff alleges that defendant made the following false representations:
A. Defendant represented to plaintiff in its advertising . . . that Kodak's "service professionals know every piece of Kodak equipment like the back of their hand . . . they have the tools, parts and test equipment to handle the servicing job right on the spot".
B. In September, 1971, defendant represented to plaintiff that the VCNA system was the most practical way to simplify work flow patterns and that its cost could be justified through substantial reduction of paper waste, elimination of testing, faster turn around and improved efficiency.
C. In the summer of 1972 at a photo finisher convention, defendant represented to plaintiff that VCNA and the following related equipment data printer, data converter, tape punch, tape reader and order input unit were highly accurate and productive and very useful in any laboratory and that VCNA system was dependable.

*34 D. In the fall of 1972, defendant represented to plaintiff that a VCNA system simplified handling and that there was a minimal make over rate with a VCNA system and that a VCNA was dependable.
E. In the fall of 1972, defendant represented to plaintiff that prompt service for VCNA and related equipment was always available by the finest trained specialists, who were the only persons authorized to service such equipment since schematics were kept secret to protect patent rights.
F. In January, 1973, defendant represented to plaintiff that a VCNA with data converter was extremely accurate and dependable needing no pretest of production negative, therefore reducing waste.
G. In February, 1973, defendant represented to plaintiff that excellant [sic] test results achieved with VNCA and data converter was the rule and not an exception, and further represented that expanded slope control range capability of data converter was available for accurate control for both under and over exposed negatives.
H. In the summer of 1975, defendant represented to plaintiff that "What Kodak had done to me (plaintiff) was incredible" and that reasonable compensation or assistance would be provided in order to correct all past problems and to give an opportunity to rebuild plaintiff.
I. At the time of introduction of Vericolor II film into the market, defendant represented to plaintiff that it was much better than previous films, that neutral tones would appear more neutral, that film handling for it was the same as for previous film and that no problems were to be expected in the making of prints by plaintiff using its then existing equipment.
J. In 1973 defendant represented to plaintiff that the VCNA's data printer provided the same information as that of the control panel.
K. In the fall of 1972, in October, 1973, and in July, 1974, defendant represented to plaintiff on each occasion that efficient service and maximum effort were to be expected from Kodak's service, that all Kodak equipment service representatives were experienced with and familiar with the equipment of defendant's manufacture plaintiff had purchased for use in making prints in its professional color laboratory. On said occasions, defendant further represented to plaintiff that specialists would be quickly called when needed and were always available for consultation.
L. That in February, 1974, and in January, 1975, defendant represented to plaintiff on each occasion that the VCNA's data compensator would make the VCNA screen match more even than before with both Ektacolor and Vericolor II film, but that the data compensator was not needed for either film.
M. That in the spring of 1975, when a new RCA scanner and display tube was installed, they would have a longer life than previous tubes.
N. That during the period 1972-1974 on many occasions, defendant represented to plaintiff that a VCNA with data compensator would provide simplified handling, no testing and fewer make overs when compared to any other system including photo tubes, further represented that it would pay for itself, and further told it could gain and hold new customers for all negatives including making of proofs.
O. That on each occasion during the period 1973-1975 when a repair was made, defendant represented to plaintiff that the equipment had been repaired and it was ready to be used.
P. That during the period 1972-1974, defendant represented to plaintiff that the VCNA was highly stable and plaintiff could expect many months of trouble-free experience.
Q. That in January, 1973, defendant represented to plaintiff that the data converter would provide prints that matched VCNA screen, if slope control negatives matched screen.

*35 R. That in the fall of 1972 and in the spring of 1973, defendant represented to plaintiff that a photo tube system with S-Printer would no longer be needed when using a VCNA system and that VCNA was recommended even for proofs.
S. In spring, 1975, defendant represented to plaintiff that photo tubes were inpracticable [sic] to the VCNA as a backup.
T. That in the spring of 1971 and in the spring of 1972, defendant represented to plaintiff on each occasion that an 80% saleable first print yield should be expected with no need to pretest negatives, that a subject failure was the only case for bad color in prints, that excellent and prompt service from local service center should be expected, that no training was needed for S-Printer repairs as long as Kodak service policy was maintained, that Kodak would fix any S-Printer mal-function and that problems were uncommon with S-Printers since proper adjustments eliminated problems.
Plaintiff alleges that all of the above representations were false; that plaintiff relied on the same; and that plaintiff was damaged as a result.
Defendant filed a counterclaim against Hershel Rich and Linda Rich to recover $29,340.06 for supplies and services provided. Plaintiff and third-party defendants Rich concede that this sum is due and owing. Accordingly, defendant will be granted summary judgment on its counterclaim.
In support of its motion for summary judgment on plaintiff's complaint, defendant asserts that plaintiff is unable to prove that it had the right to rely upon any of the alleged misrepresentations and additionally, that plaintiff cannot prove damages based upon lost profits.
On November 8, 1976, plaintiff's attorney wrote to defendant's attorney, stating in part:
. . . I have indicated to you that I expect to prove that had the representations relied upon by plaintiff been true instead of false, plaintiff's income would have been substantially greater. Further, had plaintiff's income been higher, it would have sold its assets for a markedly higher amount than it did to Garrett & Lane.
Notwithstanding that it has been plead [sic] in the third amended complaint that the difference between the amount paid for equipment of defendant's manufacture by plaintiff and the fair market value thereof, the amount plaintiff expended for unsuccessful maintenance and repair services, and the amount plaintiff expended for excessive operating and supply costs constitute items of damage, I have no intention of proving such items independently.
In a memorandum submitted by plaintiff on the issue of damages, plaintiff states that the testimony as to loss of profits and diminution in value of the business will be provided by plaintiff Hershel Rich, and two other individuals. Plaintiff states:
Mr. Rich will testify before any of the problems for which are now claimed damages, namely those beginning in 1974, that there were 250 established customers, and that in the spring of 1974 as a result of a marketing campaign which was then conducted, 270 accounts purchased services. That although all of these customers were lost due to the problems encountered with Kodak equipment and service, Mr. Rich reasonably anticipated that at least one-half of those availing themselves of the services offered would have become established customers. In addition Mr. Rich will further testify that on an average of at least one new customer was gained each week, so that in 1974 50 new customers would have been gained, in addition to those of the marketing campaign, and would have done similarly in 1975. Mr. Rich will further testify that in the spring of 1975, another marketing campaign was conducted resulting in 100 persons purchasing of the services which were offered, and again as was the case in 1974 all of these new customers ceased using the services offered because of the problems *36 herein complained of, although Mr. Rich would have again reasonably anticipated that at least half of those persons would have become regular customers. Mr. Rich will further testify that in his experience that an average customer of a color professional laboratory does substantially in excess of $2,000 worth of business with a color professional laboratory.
. . . . .
Carl L. A. Beckers of Beckers & Meyer, Inc. will testify concerning his opinion as to the profits lost by plaintiff in both 1974 and 1975, as well as to the value of plaintiff's business at the end of 1975, in response to a hypothetical question assuming the numbers of customers above indicated with the amount of business ascribed to each.
The financial statements of Color Unlimited establish that Color Unlimited sustained a loss of $1,295.00 in 1973; a loss of $4,202.00 in 1974, and had a taxable income of $1,991.18 in 1975 which includes a capital gain of $48,094.73 resulting from the sale of the photographic studio assets.
It is the Court's firm conclusion that there can be no recovery for loss of profits herein.
The general rule as to the recovery of anticipated profits of a commercial business is that they are too remote, speculative, and too dependent upon changing circumstances to warrant a judgment for their recovery. [citations omitted] Expected profits are in their nature contingent upon many changing circumstances, uncertain and remote at best. They may be recovered only when they are made reasonably certain by proof of actual facts with present data for a rational estimate of their amount, and when this is made to appear, they may be recoverable. [citations omitted]
There is, however, a well-recognized exception to this general rule. It is that the loss of profits from the interruption of an established business may be recovered where the plaintiff makes it reasonably certain by competent proof what was the amount of his profits. [citations omitted] It is held in these cases that proof of the expenses and of the income of the business for a reasonable time anterior to and during the interruption or stoppage of the business, or of facts of equivalent import, is indispensable in such cases to a lawful judgment for damages for a loss of anticipated profits. Morrow v. Missouri Pacific Railway Co., 140 Mo.App. 200, 123 S.W. 1034, 1038-39 (1909).
Accord, Fireside Marshmallow Co. v. Frank Quinlan Const. Co., 213 F.2d 16 (8th Cir. 1954); Hales v. Green Colonial, Inc., 490 F.2d 1015 (8th Cir. 1974); Coonis v. Rogers, 429 S.W.2d 709 (Mo.1968); Jack L. Baker Cos. v. Pasley Mfg. & Distrib. Co., 413 S.W.2d 268 (Mo.1967); Fuchs v. Curran Carbonizing and Engineering Co., Inc., 279 S.W.2d 211 (Mo.App.1955); Tnemec Company, Inc. v. North Kansas City Development Company, 290 S.W.2d 169 (Mo.1956). Plaintiff has failed to establish that a sufficient factual basis exists to support any claim for loss of profits. The financial records offer no support since there were no profits. Plaintiff's own testimony is too speculative in nature to constitute "proof of actual facts with present data for a rational estimate" of the amount of lost profits. Morrow, supra at 1039.
Plaintiff, however, also intends to prove damages by evidence of loss of value of the business. The law is clear that "an owner of property, without further qualification, may testify as to its reasonable market value, and the jury determines the weight and value of such testimony". Baird v. Ellsworth Realty Co., 265 S.W.2d 770 (Mo. App.1954). Accordingly, summary judgment would be inappropriate insofar as plaintiff seeks to establish loss of value of the business.
Defendant also contends that summary judgment is appropriate because plaintiff is unable to prove that it had the right to rely upon any of the alleged misrepresentations. The parties agree that in order to prevail plaintiff must establish that defendant made representations to Color Unlimited; that the representations *37 were false, material and negligently made; that Color Unlimited had a right to rely upon the representations; and that Color Unlimited did rely upon the representations; and that Color Unlimited was injured as a result.
In McAlpine Company v. Graham, 320 S.W.2d 951, 955 (Mo.App.1959) the court stated:
The representation that plaintiff's men were experts in the field and that the work would be done in an expert manner is not a representation which may form the basis of a claim of fraud. It constitutes a mere expression of opinion or "puffing" which is not actionable.
See also Crown Cork & Seal Company v. Hires Bottling Company of Chicago, 371 F.2d 256 (7th Cir. 1967) (Illinois law) holding:
If the deficiency complained of were merely performance which compared unfavorably with other machines with respect to efficiency, economy, or quality of product, the rule that statements of opinion are not actionable would clearly apply.
In line with these holdings, the Court concludes that the following representations may not form the basis of a cause of action herein:
A. Defendant represented to plaintiff in its advertising . . . that Kodak's "service professionals know every piece of Kodak equipment like the back of their hand . . . they have the tools, parts, and test equipment to handle the servicing job right on the spot".
B. In September, 1971, defendant represented to plaintiff that the VCNA system was the most practical way to simply work flow patterns and that its cost could be justified through substantial reduction of paper waste, elimination of testing, faster turn around and improved efficiency.
C. In the summer of 1972 at a photo finisher convention, defendant represented to plaintiff that VCNA and the following related equipment data printer, data converter, tape punch, tape reader and order input unit were highly accurate and productive and very useful in any laboratory and that VCNA system was dependable.
D. In the fall of 1972, defendant represented to plaintiff that a VCNA system simplified handling and that there was a minimal make over rate with a VCNA system and that a VCNA was dependable.
. . . . .
F. In January, 1973, defendant represented to plaintiff that a VCNA with data converter was extremely accurate and dependable needing no pretest of production negative, therefore reducing waste.
. . . . .
K. In the fall of 1972, in October, 1973, and in July, 1974, defendant represented to plaintiff on each occasion that efficient service and maximum effort were to be expected from Kodak's service, that all Kodak equipment service representatives were experienced with and familiar with the equipment of defendant's manufacture plaintiff had purchased for use in making prints in its professional color laboratory. On said occasions, defendant further represented to plaintiff that specialists would be quickly called when needed and were always available for consultation.
. . . . .
N. That during the period 1972-1974 on many occasions, defendant represented to plaintiff that a VCNA with data compensator would provide simplified handling, no testing and fewer make overs when compared to any other system including photo tubes, further represented that it would pay for itself, and further told it could gain and hold new customers for all negatives including making of proofs.
. . . . .
P. That during the period 1972-1974, defendant represented to plaintiff that the VCNA was highly stable and plaintiff could expect many months of trouble-free experience.
. . . . .

*38 T. That in the spring of 1971 and in the spring of 1972, defendant represented to plaintiff on each occasion that an 80% saleable first print yield should be expected with no need to pretest negatives, that a subject failure was the only case for bad color in prints, that excellent and prompt service from local service center should be expected, that no training was needed for S-Printer repairs as long as Kodak service policy was maintained, that Kodak would fix any S-Printer mal-function and that problems were uncommon with S-Printers since proper adjustments eliminated problems.
In addition, the Court concludes that the following portions of alleged representations may not form the basis of a cause of action:
E. In the fall of 1972, defendant represented to plaintiff that prompt service for VCNA and related equipment was always available by the finest trained specialists . . .
. . . . .
G. In February, 1973, defendant represented to plaintiff that excellent test results achieved with VCNA and data converter was the rule and not an exception . . .
. . . . .
I. At the time of introduction of Vericolor II film into the market, defendant represented to plaintiff that it was much better than previous films, that neutral tones would appear more neutral . .
Defendant also seeks summary judgment as to plaintiff's claim that "defendant represented to plaintiff that the VCNA's data printer provided the same information as that of the control panel". Defendant relies on the deposition of plaintiff Hershel Rich, arguing that the deposition establishes that the VCNA did provide the same information as that of the control panel except on those occasions when it was malfunctioning. The Court has reviewed the deposition and concludes that the answers provided therein are not sufficiently clear to warrant entry of summary judgment.
As to the remaining allegations, the Court concludes that summary judgment would be inappropriate. A determination of whether plaintiff had a right to rely upon representations made is of necessity grounded in the factual context of this suit. The Court upon the record before it is unwilling to conclude as a matter of law that plaintiff had no right to rely upon representations allegedly made.
Accordingly, defendant's motion for summary judgment on plaintiff's complaint will be granted in part and denied in part. Defendant's motion for summary judgment on its counterclaim will be granted.

ON MOTION FOR SUMMARY JUDGMENT
This matter is before the Court upon defendant's motion for summary judgment. Plaintiff, as sole shareholder of Color Unlimited, Inc., brought this suit seeking to recover damages for alleged misrepresentations. Defendant filed a counterclaim against plaintiff Hershel Rich and counterclaim defendants Linda Rich and Color Unlimited, Inc., and upon motion for summary judgment, was granted judgment on its counterclaim in the amount of $29,340.66.
Plaintiff's attorney, by letter of November 8, 1976 addressed to defendant's attorney, stated that:
. . . I have indicated to you that I expect to prove that had the representations relied upon by plaintiff been true instead of false, plaintiff's income would have been substantially greater. Further, had plaintiff's income been higher, it would have sold its assets for a markedly higher amount than it did to Garrett & Lane.
Notwithstanding that it has been plead [sic] in the third amended complaint that the difference between the amount paid for equipment of defendant's manufacture by plaintiff and the fair market value thereof, the amount plaintiff expended for unsuccessful maintenance and repair services, and the amount plaintiff expended for excessive operating and *39 supply costs constitute items of damage, I have no intention of proving such items independently.
By prior order of this Court, the Court ruled that plaintiff could not recover for loss of profits. The Court held that plaintiff had failed to establish a sufficient factual basis to support a claim for loss of profits. The Court noted, however, that plaintiff intended to prove damages by evidence of loss of value of the business and that accordingly, summary judgment could not be granted.
Since that ruling, defendant has deposed plaintiff to adduce his testimony on the value of the business. In the deposition, plaintiff stated that in his opinion, the reasonable market value of Color Unlimited, Inc. in April of 1974 was $600,000.00. Plaintiff based this value upon his "best judgment of the industry at that time and the potential and the way . . . [his] marketing program had been accepted". He included the assets in his valuation and stated that the equipment had a value of $100,000.00. When questioned further, however, plaintiff stated that he did not include "anything specific" in his determination of the value of the equipment. He stated that he valued the assets on the basis of the resale value rather than the book value but that he had not sold any equipment to anyone prior to April, 1974. He placed no specific value upon the established customers in arriving at the $600,000.00 valuation, and no specific value was placed upon the reputable name of the company. Plaintiff stated that he did not multiply the earnings of the company, the gross sales or any other factor to determine the value of the company. He had never offered to sell Color Unlimited, Inc. to anyone prior to April, 1974, had never sought to purchase a color laboratory from anyone prior to April, 1974, nor was he familiar with any sales involving comparable color laboratories.
While it is true that an owner without further qualification may testify as to value, the owner must have a basis for his valuation. Klapmeier v. Telecheck International, Inc., 482 F.2d 247 (8th Cir. 1973). In the deposition testimony, plaintiff has presented no factual basis in support of his valuation testimony. In opposition to this motion for summary judgment, plaintiff states:
Plaintiff is in no wise obligated at this stage of these proceedings to reveal the foundation for the testimony upon which he will base his opinion as to the diminution in value of his business attributable to the tortious conduct of the defendant. Defendant apparently believes that it failed to elicit the necessary foundation in its deposition of plaintiff. From this, defendant argues that plaintiff will be unable to lay the necessary foundation at trial. This is plainly an insufficient basis for granting a summary judgment.
Rule 56(e), Federal Rules of Civil Procedure, however, requires that the party opposing a motion for summary judgment set forth "specific facts showing that there is a genuine issue for trial". Plaintiff has failed to show, in response to this motion, that there is any foundation for his valuation testimony.
Plaintiff states that he is proceeding on the basis of Eastman Kodak Stores, Inc. v. Summers, 377 S.W.2d 476 (Mo.App.1964). The court stated therein:
The evidence set forth in some detail shows substantial damage sustained by Mr. and Mrs. Summers as a result of this enterprise. Their actual cash outlay for special installation expense, special operating material, telephone toll charges to expedite repairs and costs for having films processed elsewhere, totaled $1,238.84. Their evidence as to actual losses on their photo finishing business resulting from this defective equipment which in turn resulted in lost accounts [accounts which were cancelled], totaled $6,368.70. These two elements of damages, without considering the alleged loss of profits, amounted to more than $7,000, the amount of the verdict and judgment. We hold the verdict is not excessive and is supported by the evidence. Id. at 479. *40 Thus, the items of damages proved in the Summers case were cash outlays for expenses caused by the defendant's wrongful conduct and cancelled accounts. Yet, plaintiff, through the November 8, 1976 letter of his counsel, has stated that he does not intend to prove "the amount plaintiff expended for unsuccessful maintenance and repair services, and the amount plaintiff expended for excessive operating and supply costs . . .". This Court has previously ruled that plaintiff's evidence with respect to lost customers is too speculative to base valuation thereon. Accordingly, the Court concludes that the Summers case does not aid plaintiff herein.
On the record presented to this Court, it appears that there is no factual basis for plaintiff's valuation of the business. Thus, the Court concludes that defendant's motion for summary judgment should be granted.
The parties had previously agreed that in order to prevail, plaintiff was required to establish that defendant made representations to Color Unlimited; that the representations were false, material and negligently made; that Color Unlimited had a right to rely upon the representations; that Color Unlimited did rely upon the representations; and that Color Unlimited was injured as a result. Since plaintiff has failed to establish that he will be able to prove that Color Unlimited was injured as a result of defendant's allegedly wrongful actions, the Court concludes that this cause must be dismissed.