534 F.Supp. 801 (1982)
CHEVRON CHEMICAL COMPANY, Plaintiff,
v.
STREETT INDUSTRIES, INC., Defendant.
No. 81-751C(2).
United States District Court, E. D. Missouri, E. D.
March 30, 1982.
*802 Francis A. Casserly, Fairfax Jones Biggs, Casserly, Barnes, Fickie & Wolf, St. Louis, Mo., for plaintiff.
Justin C. Cordonnier, Edwin L. Noel, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
This case is now before this court for the purpose of determining the appropriate measurement of damages sustained by plaintiff in this cause of action. At the close of the evidence, the Court withdrew from the jury the question of damages. The parties believed that the issue presented a question of law and therefore agreed that the court should determine the correct measure of damages in the event that the jury found the defendant liable to the plaintiff. Subsequently, the jury determined that the defendant was responsible for the loss of 200,000 gallons of Alkylate 21 due to its failure to safeguard adequately the property of the plaintiff.
In an effort to help the court's determination of this issue, the parties have submitted post trial briefs. In addition, the parties have stipulated that at the time of the loss, the cost of manufacture of Alkylate was 28.5 cents per pound and the retail price was 45.5 cents per pound. The transportation charges amount to Twenty-Four Thousand Eight Hundred dollars ($24,800.00). The defendant argues that the plaintiff is entitled to the cost of production because the plaintiff failed to establish at trial that sales of the chemical were lost as a result of the spill. It is the contention of the defendant that the evidence showed that a delay in sales was due primarily to the problems experienced by Chevron in connection with its periodic maintenance in May of 1981 and was not due to the negligence of the defendant. According to the defendant's theory of damages, if Chevron *803 is awarded the retail price, the plaintiff would be receiving its anticipated lost profits without having established that it actually lost sales.
Unlike the standard for measurement of damages proposed by the defendant, the plaintiff urges this court to award Chevron Chemical Company the retail price of Alkylate at the time of the loss, which was 45.5 cents per pound. The plaintiff contends that the measure of damages for property which is totally lost or destroyed as a result of a wrong committed by another party is the market value of the property at the time of loss or destruction. In addition, the plaintiff argues that it is entitled to interest on the value of the lost Alkylate from the date of the spill to the date of the judgment. Finally, the plaintiff asserts that it is entitled to an award of attorney's fees pursuant to Paragraph 11(b) of the contract entered into by the parties. The paragraph states that the defendant shall indemnify [the plaintiff] against and hold it harmless from all loss, expense, claims, damages, and liability for death or injury to persons, or damage to property, arising out of or in any way connected with performance by Streett under this agreement." The plaintiff submits that the agreement to indemnify should apply to any loss suffered by Chevron Chemical Company as a result of the defendant's negligence. It is the contention of the plaintiff that the duty of Streett to indemnify Chevron for losses sustained is not limited to the claims of third parties.
As a general rule, when personal property is destroyed or lost, the usual measure of damages is the market value of the property at the time and place of destruction. Standard Oil Company of New Jersey v. Southern Pacific Co., 268 U.S. 146, 45 S.Ct. 465, 69 L.Ed. 890 (1925). However, just as there may be more than one market geographically, there may be more than one market economically. Therefore, the mere assertion that the standard for measuring lost or destroyed property is its market value at the time of loss or destruction, does not resolve the issue at hand. The measurement of damages in this case will be contingent upon the choice of the appropriate economic market.
As a general rule, when personal property is held by the owner as stock rather than for purposes of consumption, the value of the property is not determined by reference to the retail market. Rather, the price of the goods or property is to be determined by reference to the markets in which the property was purchased. Skaggs Drug Centers, Inc. v. City of Idaho Falls, 90 Idaho 1, 407 P.2d 695 (1965). Therefore when property is part of a stock of a business concern the measure of damages is the difference between the wholesale market value of the product after loss or destruction, and the wholesale value, plus delivery charges immediately before the loss or destruction occurred. Whaley v. Crutchfield, 226 Ark. 921, 294 S.W.2d 775 (1956). The theory underlying this rule is that if the owner of lost or destroyed property is a retailer or manufacturer the goods may be replaced at their wholesale value and subsequently sold at retail just as the original goods would have been sold. Therefore courts generally allow the retailer to recover the wholesale value of the product destroyed or lost plus other costs of replacement. D. Dobbs, Remedies, § 5.10 (1973).
The major concern when awarding damages is to compensate the plaintiff for the loss it has suffered. However, if a party can show a loss of profits with reasonable certainty over and above the replacement value of the goods destroyed or lost, compensation for lost profits may be recovered in addition to the wholesale price. D. Dobbs, Remedies, § 5.10 (1973). Under Missouri law, "[t]here may be a recovery for loss of profits shown to be the natural and probable consequence of the act or omission complained of, provided the amount thereof is shown with sufficient certainty." Eastman Kodak Stores, Inc. v. Summers, 377 S.W.2d 476, 481 (Mo.App.1964). Therefore, lost profits will be afforded only if it is reasonably certain that the profits would have been realized but for the negligent act of the defendant; and the amount of profits *804 lost can be ascertained from the evidence introduced with reasonable certainty. Riddle v. Dean Machinery Co., 564 S.W.2d 238 (Mo.App.1978). It necessarily follows that if there are uncertainties or speculations as to whether the loss of profits was the result of the wrong, the profits are not recoverable. Eastman Kodak Stores, Inc. v. Summers, supra.
Under the circumstances of this case, it is clear that plaintiff Chevron Chemical Company was holding the Alkylate 21 as part of its stock for the purpose of sale. In addition, the plaintiff manufactured this chemical which would ensure Chevron of its ability to replace the Alkylate 21 at the wholesale price. Therefore the value of this product should be determined by reference to the wholesale market. Furthermore, it is the opinion of this court that the plaintiff did not establish a loss of profits or sales with the requisite degree of certainty required by law. Therefore, the plaintiff will be awarded the cost of manufacture of Alkylate which was 28.5 cents per pound and transportation charges plus interest from the date of damage. This court does not interpret Paragraph 11(b) of the contract executed by the parties as permitting an award of attorney's fees.
Accordingly, the plaintiff shall be awarded the wholesale price of the lost Alkylate 21 which was 28.5 cents per pound, plus transportation charges in the amount of $24,800.00, in addition to interest at the legal rate of 9%.