———————

No. 96-2099

———————

Midwest Printing, Inc.,          *
                                 *
        Plaintiff/Appellant,     *
                                 *   Appeals from the United States
    v.                           *   District Court for the
                                 *   Eastern  District  of  Missouri
                                 *
AM International, Inc.,           *
                                 *
    Defendant/Appellee.          *

———————

            Submitted:  January 15, 1997

              Filed:  March 4, 1997

———————

Before BOWMAN and MURPHY, Circuit Judges, and JONES,[1] District Judge.

———————

JONES, District Judge.

Mid-West Printing, Inc. ("Mid-West") purchased an Eagle 5220 printing press from AM International, Inc. ("AM"), and brought this action seeking to rescind the sale, alleging that it was fraudulently induced to enter into the written sales agreement. Mid-West also alleges that there were breaches of express and implied warranties. The District Court[2] granted summary judgment for AM and Mid-West appeals. We affirm.

**BACKGROUND**

———————

[1]The HONORABLE JOHN B. JONES, United States District Judge for the District of South Dakota, sitting by designation.

The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri, Eastern Division.

Mid-West alleges that prior to entering into the purchase, AM made a number of representations through its literature and sales representatives that the Eagle 5220 would dramatically increase capacity by producing high-quality two-color jobs in one pass instead of two, perform in a manner superior to presses of its size, reduce set-up time, and set new standards for reliability and ease of maintenance. Mid-West also alleges that AM represented that the Eagle 5220 had more automated features designed into it than any other press in its class, that each printing pass would be more productive and profitable, and that AM had full service that is second to none.

Mid-West was skeptical of purchasing the press based on these representations, so AM arranged a trip for Mid-West's President and pressman to go to AM's world headquarters in Chicago to see the Eagle 5220 in operation. This press was a sophisticated machine with electronic controls and subject to variables such as set up, type and weight of paper, number of colors, humidity, and operator adjustments. Even though Mid-West was satisfied with the press after this demonstration, it was still concerned it might "fall flat on its face" in Mid-West's shop. Mid-West asserts that its satisfaction was guaranteed and that AM told it that AM would take back the press if the press would "fall flat on its face."

Mid-West and AM entered into a written sales agreement on December 7, 1990. This agreement provides in bold print on the front that it is "subject to the Terms and Conditions set forth on the reverse side hereof." The agreement limits the buyer's remedies to repair or replacement of the press if it does not perform satisfactorily. Mid-West seeks to avoid these limitations on the basis that its president did not see the reverse side of the sheet, and did not get a copy of the sales agreement.

AM delivered the press to Mid-West on March 15, 1991, but AM

was unsuccessful in getting the press to perform to Mid-West's satisfaction. Mid-West started keeping a log of its problems with the press on September 16, 1991 and maintained the log until October 23, 1994. Pursuant to the sales agreement, AM offered to replace the press with another Eagle 5220 press, but Mid-West refused the offer. Mid-West's attorney wrote AM on May 15, 1992 asking them to take back the press, refusing AM's offer to replace the press, and demanding monetary damages.

**DISCUSSION**

The district court's order granting summary judgment is reviewed de novo. United States v. Tharp, 973 F.2d 619, 620 (8th Cir. 1992). In reviewing a grant of summary judgment, the Court considers whether the record, when viewed in the light most favorable to the non-moving party, shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Walsh v. United States, 31 F.3d 696, 698 (8th Cir. 1994). The non-moving party is given the benefit of all reasonable inferences that can be drawn from the evidence. Adkison v. G.D. Searle & Co., 971 F.2d 132, 134 (8th Cir. 1992).

**1. Fraudulent Inducement to Enter the Written Agreement.**

Mid-West's basic position is that the written Sales Agreement should not be enforced in this case because its president did not read the reference on the front page of the Sales Agreement to the terms and conditions on the reverse side of the document and was not given a copy of the Sales Agreement. Mid-West's failure to carefully consider what was signed, however, cannot be translated into a basis of liability against AM. Under Missouri law, "a person who has an opportunity to read a document but signs it without doing so is held to have knowledge of the document's contents, absent a showing of fraud." United States for Use of Bussen Quarries, Inc. v. Thomas, 938 F.2d 831, 833 (8th Cir. 1991)

(citing <u>Mercantile Trust Co. v. Carp</u>, 648 S.W.2d 920, 924 (Mo. Ct. App. 1983)).

Missouri recognizes a cause of action for fraudulent inducement.  <u>See</u> <u>R.W. Murray Co. v. Shatterproof Glass Corp.</u>, 697 F.2d 818, 830 (8th Cir. 1983).  To withstand AM's summary judgment motion, Mid-West must produce sufficient evidence to satisfy each of the following elements of a fraud claim: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the representation should be acted upon by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance on the representation being true, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury.  <u>See</u> <u>Emerick v. Mutual Ben. Life Ins. Co.</u>, 756 S.W.2d 513, 519 (Mo. 1988).  The absence of any element is fatal to a fraud claim.  <u>Id.</u> at 519.

Mid-West does not allege that AM ever represented that the terms of the written agreement would not be enforced.  <u>See</u> <u>Pinken v. Frank</u>, 704 F.2d 1019, 1022 (8th Cir. 1983).  Mid-West does claim that AM represented that if the press fell flat on its face, AM would take the press back.  Mid-West does not assert that AM ever told it that AM would not enforce the repair or replace provision of the sales agreement but would instead take the press back and give it a refund of the purchase price.

Furthermore, it is clear that the representations upon which Mid-West bases its fraudulent inducement claim constitute mere expressions of opinion or "puffing" which are not actionable representations.  <u>See</u> <u>Rich v. Eastman Kodak Co.</u>, 443 F. Supp. 32, 37 (E.D. Mo. 1977), <u>aff'd</u>, 583 F.2d 435 (8th Cir. 1978); <u>McAlpine Co. v. Graham</u>, 320 S.W.2d 951, 955 (Mo. Ct. App. 1959).  Representations such as these that compare the efficiency, economy or quality of one product to other products may not form the basis

of a cause of action in fraud. See Rich, 443 F. Supp. at 38 (citing Crown Cork & Seal Co. v. Hires Bottling Co. of Chicago, 371 F.2d 256 (7th Cir. 1967)).

Mid-West cannot justifiably rely on mere expressions of opinion or "puffing." See Emerick, 756 S.W.2d at 519 (citing Dillard v. Earnhart, 457 S.W.2d 666 (Mo. 1970) (citing Restatement of Torts § 530 cmts. a and c)). In any event, Mid-West saw the Eagle 5220 press in operation and was able to judge for itself the capacity and quality of the printing done by the press.

Moreover, a "tort action does not arise from a breach of contract unless the basis of the tort is a duty that is 'superimposed by operation of law as an incident of the relationship between the parties rather than the contract.'" Pandjiris, Inc. v. Sunshine Stainless Tank & Equip. Co., 655 F. Supp. 473, 474 (E.D. Mo. 1987) (quoting General Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1216 (8th Cir. 1973)). In Pandjiris, a buyer of certain equipment filed a counterclaim based theories of fraudulent misrepresentation and breach of warranty against the equipment seller. 655 F. Supp. at 474. The district court found that the buyer's allegations of fraudulent misrepresentation "constitutes no more than a recasting of its claim for breach of contract as a tort." Id. The court granted summary judgment to the seller because the seller had no duty, aside from that duty established in the contract, to deliver functional equipment to the buyer. Id. Similarly, AM had no duty to Mid-West other than that which arose pursuant to the Sales Agreement.

Therefore, the trial court's determination that Mid-West did not produce evidence which created a jury issue on fraudulent inducement and thereby enable it to avoid the terms of the written sales agreement is correct and will be affirmed.

**2. Breach of Express and Implied Warranties under the Sales**

**Agreement.**

Because Mid-West did not establish a fraudulent inducement claim, it is bound by the terms of the written Sales Agreement. The Sales Agreement limits the warranty on the press to "defects in material and workmanship" and explicitly disclaims "**ALL OTHER WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS IMPLIED OR STATUTORY.**" In particular, the Sales Agreement provides that "**ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WHICH EXCEED THE AFORESAID OBLIGATIONS ARE HEREBY DISCLAIMED BY SELLER AND EXCLUDED FROM THIS AGREEMENT.**" Furthermore, the Sales Agreement specifically limits the remedies available to the purchaser under the warranty "solely to the repair or, at Seller's option, replacement of equipment or parts which Seller determines to be defective." Under Missouri law, the disclaimer of warranties in a contract document is effective to bar a claim based on express warranty. See <u>Karr-Bick Kitchens & Bath, Inc. v. Gemini Coatings, Inc.</u>, 932 S.W.2d 877, 879 (Mo. Ct. App. 1996); <u>Clevenger and Wright Co. v. A.O. Smith Harvestore Products, Inc.</u>, 625 S.W.2d 906, 909 (Mo. Ct. App. 1981). As to any implied warranties, the language in the Sales Agreement complies with the requirements of Mo. Rev. Stat. § 400.2-316(2) (that is, it was in writing, conspicuous, and mentions merchantability) and thus effectively disclaims all implied warranties. See <u>Karr-Bick</u>, 932 S.W.2d at 879. Because its claims for breach of express warranty and breach of implied warranty are barred by the terms of the Sales Agreement, the trial court's decision granting AM summary judgment on the breach of warranty claims is correct and will be affirmed.

**3. Whether Remedies Failed of Their Essential Purpose.**

Mid-West's final position was that the remedies set out on the reverse side of the Sales Agreement failed of their essential purposes. Missouri law limits the rights of parties to contractually limit available remedies "[w]here circumstances cause

an exclusive or limited remedy to fail of its essential purpose."  Mo. Rev. Stat. § 400.2-719(1)(b).  If Mid-West had accepted AM's offer to replace the Eagle press, and the replacement press had the same deficiencies that Mid-West complains of in the original press, this position would have validity.  However, we will never know whether the replacement press offered by AM would have complied with the warranties made.  Mid-West's refusal to accept AM's offer to replace the press precludes Mid-West from recovering on this theory.  Cf., e.g., Transport Corp. of America, Inc. v. International Bus. Machs., Inc., 30 F.3d 953, 959 (8th Cir. 1994) (applying Minnesota law) (holding that remedy of repair and service did not fail of its essential purpose when seller provided warranty service on the product and accomplished repair).

The Court has carefully considered Mid-West's other arguments and finds them to be without merit.

## CONCLUSION

The trial court's decision granting summary judgment to AM is affirmed in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-