TANDY CORPORATION[1] *vs.* BOSTON PET SUPPLY, INC.

No. 98-P-996.

Middlesex. January 10, 2000. - June 12, 2000.

Present: LAURENCE, DREBEN, & BECK, JJ.

*Damages,* Tort, Loss of inventory. *Evidence,* Value.

At the trial of an action seeking recovery for smoke damage to inventory caused by the defendant's negligent maintenance of electrical wiring in premises adjacent to the plaintiff's store, the judge correctly ruled that the proper measure of damages was the wholesale cost of the goods less the salvage recovery and properly submitted the issue to the jury on that basis. [393-395]

CIVIL ACTION commenced in the Superior Court Department on February 7, 1995.

The case was tried before *Hiller B. Zobel,* J.

*Darrell John* for the plaintiff.

*Stephen H. Lash* for the defendant.

DREBEN, J. A fire at the defendant's premises adjacent to the plaintiff's store caused smoke damage to the plaintiff's inventory. A Superior Court jury found that the defendant had been negligent in its maintenance of electrical wiring and that its negligence was a proximate cause of the plaintiff's loss. The question before us is whether, as the plaintiff claims, the judge erred in submitting two special questions to the jury on damages and in ruling that the measure of damages is the plaintiff's wholesale cost less the salvage recovery. We affirm. Only the plaintiff introduced evidence as to damages. According to that evidence, the retail value of the inventory at the time of the fire was approximately $262,000; the wholesale cost, approximately $120,000; the salvage value, 38% of the retail value. Evidence was also introduced that, one week after the fire, an advertise-

[1]Doing business as Radio Shack.

ment appeared for a "Smoke Sale" at the Radio Shack store where consumers could "Save up to 50% OFF . . . regular prices." The cost of repairing fixtures and carpeting was $7,021.09 and the cost of advertising the "Smoke Sale" was $127.80. The plaintiff introduced no evidence of other expenses incurred by reason of the fire, of lost profits, or of the amount realized at the "Smoke Sale."

The plaintiff argues that the jury should have been permitted to take a number of different values of the inventory into account, including the retail selling price. The defendant, on the other hand, claims that the wholesale selling price should be used as the measure from which to deduct salvage value; otherwise, the plaintiff would receive a windfall as there was no guarantee as to how many, if any, goods it would have sold.

The questions submitted to the jury and their answers were as follows:

> "3. Please state, *in words*, the amount of damages to Tandy Corporation of which the negligence of Boston Pet Supply, Inc. was *a* proximate cause:
>
> a. For damage to goods (using cost as the value): *zero* Dollars.
>
> b. For damage to goods (using selling price as the value): *one hundred eighteen thousand two hundred forty five* Dollars.
>
> c. For damage to the premises: *seven thousand one hundred forty eight* Dollars."

Judgment entered for the plaintiff in the amount of $7,148.

We agree with the judge that, since the plaintiff is entitled only to be made whole, the wholesale price is the appropriate one in this case. There was no suggestion that the goods were not freely obtainable in the market, that they had peculiar value to the owner, or that they had a special value for a particular purpose such as real estate may, in some circumstances, have. In such cases, market value may be one of several measures of damages. *Agoos Leather Cos.* v. *American & Foreign Ins. Co.*, 342 Mass. 603, 607-608 (1961), relied on by the defendant, involved real estate which may have had special value as a tannery and hence is not on point.

We consider that the discussion in Restatement (Second) of

Torts § 911 comment d (1979) reaches the proper result. In relevant part that comment reads:

> "*d. Wholesale or retail value.* From the time when a chattel is manufactured to the time of its actual use, there may be many markets in which it is sold. Thus, different prices are paid by the wholesaler, the retail dealer and the consumer. Since the measure of recovery is determined by the harm done, the market that determines the measure of recovery by a person whose goods have been taken, destroyed or detained is that to which he would have to resort in order to replace the subject matter. Thus the consumer can recover the retail price; the retail dealer, the wholesale price."

The majority rule is to the same effect.[2] See Minzer et al., Damages in Tort Actions § 37.01[1][b], at 37-19 (Supp. 1997); 1 Dobbs, Remedies § 5.13(3), at 844 (2d ed. 1993). Cf. *Pierce* v. *O'Brien*, 189 Mass. 58, 61 (1905). But cf. *Bond Pharmacy, Inc.* v. *Cambridge*, 338 Mass. 488, 491-492 (1959).

The plaintiff also argues that the jury should have been permitted to award other expenses as the store was shut down for at least three days, and the plaintiff incurred regular operating expenses while selling the merchandise at reduced prices. The rub with the plaintiff's argument is that no evidence of

---

[2] *Rudd Constr. Equip. Co.* v. *Clark Equip. Co.*, 735 F.2d 974, 984-985 (6th Cir. 1984) (applying Kentucky law); *United States* v. *Crown Equip. Corp.*, 86 F.3d 700, 710-711 & nn.6-8 (7th Cir. 1996) (looking to Wisconsin law); *Chevron Chem. Co.* v. *Streett Indus., Inc.*, 534 F. Supp. 801, 803-804 (E.D. Mo. 1982) (Missouri law); *Bayliss Mach. & Welding Co.* v. *Hunstville Ice & Coal Co.*, 265 Ala. 383, 388, 389 (1956); *Whaley* v. *Crutchfield*, 226 Ark. 921, 925-927 (1956); *McMahan's of Santa Monica* v. *Santa Monica*, 146 Cal. App. 3d 683, 700-701 (1983); *Ocean Elec. Co.* v. *Hughes Labs., Inc.*, 636 So. 2d 112, 114-116 (Fla. Dist. Ct. App. 1994); *United Truck Rental Equip. Leasing, Inc.* v. *Kleenco Corp.*, 84 Haw. 86, 94 (Ct. App. 1996); *Skaggs Drug Centers, Inc.* v. *Idaho Falls*, 90 Idaho 1, 10 (1965); *Millison* v. *Ades of Lexington, Inc.*, 262 Md. 319, 324-327 (1971); *Farer* v. *Benton*, 740 S.W.2d 676, 678 (Mo. Ct. App. 1987); *Dubiner's Bootery, Inc.* v. *General Outdoor Advertising Co.*, 10 A.D.2d 923, 923 (N.Y. 1960); *Akro-Plastics* v. *Drake Indus.*, 115 Ohio App. 3d 221, 227-228 (1996); *Mock* v. *Terry*, 251 Or. 511, 513 (1968). But see *H.K. Porter Co.* v. *Halperin*, 297 F.2d 442, 445 (7th Cir. 1961) (Illinois law); *Tozzi* v. *Testa*, 97 Ill. App. 3d 832, 837 (1981); *Ishee* v. *Dukes Ford Co.*, 380 So. 2d 760, 761 (Miss. 1980); *Kaplan* v. *Winston-Salem*, 286 N.C. 80, 83 (1974). See also *Youngset, Inc.* v. *Five City Plaza, Inc.*, 156 Conn. 22, 27-28 (1968).

these expenses was presented to the jury. To permit the assessment of damages for such matters in the absence of any evidence at all of such costs would allow the jury to award damages on pure speculation.

*Judgment affirmed.*