HINGHAM MUTUAL FIRE INSURANCE COMPANY *vs*. DANIEL P. MERCURIO & others.[1]

No. 06-P-1994.

Worcester. November 14, 2007. - January 4, 2008.

Present: CYPHER, VUONO, & GRAINGER, JJ.

*Insurance,* Liability insurance. *Contract,* Rescission, Reformation.

A Superior Court judge correctly concluded that an insurer was not entitled to a judgment declaring that it was legally permitted to rescind an umbrella personal liability policy that it issued to a married couple based on their failure to list their son as a household member in response to the operator information question on the insurance application, where there was no material misrepresentation on the application for purposes of G. L. c. 175, § 6, in that the operator information question was ambiguous, and the couple provided an honest response to an objectively reasonable interpretation of the question in the context of the application as a whole. [23-26]

A Superior Court judge properly declined to reform an umbrella personal liability insurance policy to exclude the insureds' son from the definition of "Insured" in the policy, where the insurer offered no proof to satisfy its burden, as the party seeking reformation, that either party to the policy, much less both, intended to alter the normal contractual terms, and where, to the extent the judge withheld reformation at least partly for equitable reasons, there was no abuse of discretion. [26-28]

CIVIL ACTION commenced in the Superior Court Department on November 27, 2001.

The case was heard by *James H. Wexler*, J.

*Kevin Hensley* for the plaintiff.

*Susan A. Hartnett* for the intervener.

GRAINGER, J. Hingham Mutual Fire Insurance Company (Hingham) appeals the entry of a declaratory judgment by a judge of the Superior Court denying its right to rescind a one million

[1]David P. Mercurio, Melanie A. Mercurio, Mary F. Gustafson, and Kellie Ambrose; and Cambridge Mutual Fire Insurance co., intervener. None of the individual defendants participated in the appeal.

dollar personal umbrella policy (the policy) issued to David and Melanie Mercurio (the Mercurios), and dismissing its claim for reformation of the policy. We affirm.

1. *Background.* After a jury-waived trial, the judge found the following: Hingham had previously insured the Mercurios under the policy. As part of the periodic renewal process, Hingham wrote to West Boylston Insurance Agency (Boylston) and requested that Boylston send it a completed personal umbrella application form for the Mercurios. Boylston is the Mercurios' insurance agency and also has an agency agreement with Hingham. As requested, Boylston filled out a personal umbrella application and mailed it to David Mercurio for review and signing.

On the application in a section headed, in boldface capitalized print, "OPERATOR INFORMATION," Hingham requested, in smaller capitalized nonboldface letters, that the applicants list "ALL MEMBERS OF HOUSEHOLD AND ALL OPERATORS OF VEHICLES/WATERCRAFT AS REQUIRED BY COMPANY."[2] When Boylston filled out the operator information section, it listed only David and Melanie Mercurio. When the Mercurios received the application, David added their nineteen year old daughter Talia's name in this section, but he did not add their seventeen year old son Daniel's name. It is undisputed that Daniel lived at the Mercurios' home, owned his own truck that was not listed on his parents' automobile policy, and that he had a separate automobile policy to cover his truck. Talia, who also lived at home, did not have her own vehicle and was listed on her parents' automobile policy.

David signed and returned the application to Boylston, and Boylston in turn forwarded it to Hingham. The Mercurios paid the premium and Hingham renewed the policy. If David had listed Daniel as an operator on the application, the annual premium would have increased by twenty-five dollars (an eighteen percent increase).

During the policy period, Daniel was involved in a two-car accident in New Hampshire while driving a friend's car. Two passengers in Daniel's car were injured and the driver of the

---

[2]As discussed *infra*, this section was preceded by others for "PRIMARY POLICY INFORMATION," "AUTOMOBILES," and "WATERCRAFT."

other car, Lillian Prud'homme, was killed. Several months later, after Prud'homme's attorney requested information related to all policies insuring the Mercurio household, Hingham learned of the accident. Hingham then notified the Mercurios that it was rescinding the policy and refunding the premium the Mercurios had paid for that policy year. As grounds, Hingham stated that the Mercurios made a material misrepresentation in their application by failing to list Daniel as a household member in response to the operator information question.

Hingham then commenced the present action, seeking a declaration that its rescission of the policy was permitted by law and that the policy was therefore void. It later added a count seeking, in the alternative, reformation of the policy to exclude Daniel from coverage. Lillian Prud'homme's umbrella insurer, Cambridge Mutual Fire Insurance Company (Cambridge), intervened on the grounds that rescission of Hingham's policy was likely to adversely affect Cambridge's obligation to the Prud'homme estate.[3]

We refer to additional facts as they become relevant.

*Discussion.* 1. *Rescission.* We agree that Hingham was not entitled to rescind the policy, albeit on somewhat different grounds than employed by the judge. An insurer may only rescind or cancel an insurance policy based upon a misrepresentation as follows:

> "No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss."

G. L. c. 175, § 186. Any misrepresentation that results in the insurer's charging a lower premium than it otherwise would

---

[3]The estate of Lillian Prud'homme and Roland Prud'homme filed a wrongful death suit against Daniel in New Hampshire State court. Daniel's automobile insurers agreed to pay $525,000 and Cambridge agreed to pay $315,000 to the Prud'homme estate. Pursuant to an intercompany agreement between Hingham and Cambridge, if Hingham is unsuccessful in this action it must reimburse Cambridge for that amount.

have charged is "material." *Barnstable County Ins. Co.* v. *Gale,* 425 Mass. 126, 128-129 (1997) (finding insured's failure to disclose his second car material even where it did not techni- cally increase risk of loss as cars were never on the road at the same time). A material misrepresentation in an application for an insurance policy will give the insurer the right to rescind it. *Ibid.*

In order to determine whether an answer is a misrepresenta- tion, we must identify the information sought by the question. "Where . . . there is more than one rational interpretation of policy language, 'the insured is entitled to the benefit of the one that is more favorable to it.' " *Hakim* v. *Massachusetts Insur- ers' Insolvency Fund,* 424 Mass. 275, 281 (1997), quoting from *Trustees of Tufts Univ.* v. *Commercial Union Ins. Co.,* 415 Mass. 844, 849 (1993). See *Interstate Gourmet Coffee Roasters, Inc.* v. *Seaco Ins. Co.,* 59 Mass. App. Ct. 78, 83 (2003) ("exclusions from insurance coverage and ambiguities in an insurance policy are to be strictly construed against an insurer"). The rationale behind this rule is to encourage insurers, who typically draft the policy and are in the best position to avoid future misunderstand- ings, to be as clear and explicit as possible. See 2 Couch, Insur- ance § 22:14, at 22-33 (3d ed. 2005) ("doubtful language is to be interpreted most strongly against the party who used it in drafting the contract"). This same rationale extends to insurance questionnaires and applications. See, e.g., *Vella* v. *Equitable Life Assur. Soc. of U.S.,* 887 F.2d 388, 392 (2d Cir. 1989) (ap- plying rule of construing insurance policies against insurer "to questions on insurance applications where the insurance company seeks to avoid liability by citing the answers thereto as mis- representations"). Where a question on an application lends itself to more than one reasonable interpretation, an honest answer to one of those reasonable interpretations cannot be labeled a misrepresentation.

Whether a particular contract provision is ambiguous is a question of law reviewable by an appellate court. See *Berkowitz* v. *President & Fellows of Harvard College,* 58 Mass. App. Ct. 262, 270 (2003). "An ambiguity exists in an insurance contract when the language contained therein is susceptible of more than one meaning. . . . It must be shown that reasonably intelligent persons would differ as to which one of two or more meanings

is the proper one." *Jefferson Ins. Co. of N.Y.* v. *Holyoke*, 23 Mass. App. Ct. 472, 474-475 (1987).

The operator information question on the Mercurios' application read as follows: "List All Members Of Household And All Operators Of Vehicles/Watercraft As Required By Company." Below the question was a table with several rows, and columns for name, date of birth, date driver license issued, driver license number, and "VEHICLE, CRAFT, % USE, ETC."

The judge, in an interlocutory order, ruled that this question "clearly call[ed] for the identification of Daniel who was living at home." This is one rational interpretation of the language at issue, but it is not the only one. While directing the applicant to list "all members of household," the query itself was titled "Operator Information" and sought specific information on each person's driver's license and percentage use of vehicles and watercraft. It is thus somewhat unclear whether the question actually sought the names of household members who were not "operators of vehicles/watercraft." The question becomes far more confusing read in the context of the application as a whole. The immediately preceding questions, titled "AUTOMOBILES" and "WATERCRAFT," direct the applicant to "[l]ist all [a]utos owned, leased or furnished for reg. use" and to "[l]ist all watercraft owned, leased, chartered, or furnished for regular use." It was thus additionally unclear whether the applicant, who had presumably just answered the preceding questions, is thereafter being asked, when filling out "Operator Information," for only those operators or for household members who operate the listed vehicles and watercraft, or for household members who operate any vehicles or watercraft whatsoever.[4] Moreover, the application contained a prior section titled "PRIMARY POLICY INFORMATION," which requested information on the primary automobile policy.[5] Thus, another reason that the "Operator Information" question

---

[4]The information in the boxes following the "Automobiles" and "Watercraft" sections was filled out by Boylston, and included only the Mercurios' two family automobiles. Daniel's car was not listed. David did not add Daniel's car, and Hingham did not allege that this omission was a material misrepresentation.

[5]Again, the information in this box was filled out by Boylston; it included the Mercurios' automobile insurance policy, but Daniel's car insurance policy was not listed. David did not add Daniel's policy, and Hingham did not allege

may have been ambiguous is that it is unclear whether the applicant should list only operators covered by the listed primary insurance, or whether it should list all operators. One logical reason why one may honestly conclude that the question sought only the former is that the umbrella policy provides secondary insurance, and requires a minimum amount of primary automobile insurance as a condition of coverage.[6] Finally, the last portion of the instruction, "as required by company," is entirely circular and does not clarify matters, particularly where there was some testimony that Boylston told the Mercurios they need not list Daniel.

A policyholder generally has no obligation to answer a question that has not been asked by the insurer. *Quincy Mut. Fire Ins. Co.* v. *Quisset Properties, Inc.*, 69 Mass. App. Ct. 147, 154-156 (2007).[7] David's failure to list Daniel was an honest response to an objectively reasonable interpretation of the question as a direction to list only those members of the household who operated the vehicles or watercraft previously listed. It is undisputed that Daniel did not operate either of the two vehicles listed. And, as it is also undisputed that Daniel was not covered under the primary policy previously requested by the application, there was yet additional good faith interpretive basis for David to exclude him. We consider it significant that although Boylston had listed only David and Melanie in response to the question, David specifically added Talia, a household member who was both an operator of the listed vehicles and covered by the primary policy. In light of the above ambiguities, the Mercurios' response to the question was not a misrepresentation.[8]

2. *Reformation.* Hingham also contends that the trial judge

---

this failure was a material misrepresentation.

[6]While the policy provides a range of general liability coverage beyond that arising from the use of automobiles and other vehicles, the focus of the application is directed to this area.

[7]In *Quincy Mut. Fire Ins. Co.* v. *Quisset Properties, Inc.*, 69 Mass. App. Ct. 147 (2007), this court considered whether summary judgment was properly granted where the parties' submissions left disputed whether the insurer had made a request for certain information such that a failure to provide the information could be found to be a misrepresentation. Accordingly, that case was remanded for development of the evidence at trial. *Id.* at 157.

[8]Because we affirm the trial court's declaration on the distinct grounds that the Mercurios gave an honest response to an ambiguous question, we need not address whether the declaration is also supported on the grounds advanced by

improperly refused to reform the policy to exclude Daniel from the definition of "Insured." For several reasons, we concur in the result reached by the judge. The policy defines "Insured" as "you [the named insured] or any relative of yours." "Relative" is, in turn, defined as "a person who lives in your household and is: A. related to you; or B. an unmarried, dependent person under the age of 21 in your care."[9] These definitions are boilerplate language in an instrument prepared by the company; there is no evidence of any negotiation over, or even reference to, these terms by the parties at the time of the renewal. Accordingly, the doctrine of mutual mistake, which applies only where "the language of a written instrument does not reflect the true intent of both parties," does not apply to these facts. *Polaroid Corp.* v. *Travelers Indem. Co.*, 414 Mass. 747, 756 (1993). The party seeking reformation must prove the mistake by "full, clear, and decisive proof." *Ibid.* Here, Hingham offered no proof to satisfy its burden that either party, much less both, intended to alter the normal contractual terms. The trial judge's findings of fact, supported by the record, reflect this — the parties may have been "mistaken" as to collateral matters, namely the correct premium to be charged and the import of the "Operator Information" question, but they did not intend anything that was not reflected in the contractual documents taken as a whole.

Finally, we note that even had Hingham provided clear and convincing evidence of a mutual mistake, reformation need not necessarily be awarded. "Since the remedy of reformation is equitable in nature, a court has the discretion to withhold it . . . on grounds that have traditionally justified courts of equity in withholding relief." Restatement (Second) of Contracts § 155 cmt. d (1981). See *Nissan Autos. of Marlborough, Inc.* v. *Glick,* 62 Mass. App. Ct. 302, 306 (2004) (if other conditions are met, "court may choose to reform the agreement at its discretion"). To the extent that the judge withheld reformation at least partly for equitable reasons, stating that "[i]t would be inequitable to burden the Mercurios with the mistakes and poor training of

the trial judge — namely, that rescission was improper because Hingham's agent, Boylston, had actual knowledge of Daniel's status as a member of the Mercurio household.

[9]Hingham concedes that the policy, on its face, provides Daniel with coverage.

Hingham's agent at . . . Boylston," there was no abuse of discretion.

*Judgment affirmed.*