NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-1706                                         Appeals Court

EDITH SCHULTZ  vs.  CHRISTOPHER TILLEY & others.[1]


No. 15-P-1706.

Suffolk.     December 15, 2016. - May 18, 2017.

Present:  Cypher, Maldonado, & Blake, JJ.[2]


Dog.  Insurance, Coverage, Homeowner's insurance,
    Misrepresentation.


Civil action commenced in the Superior Court Department on
July 30, 2013.

The case was heard by Heidi E. Brieger, J., and entry of
separate and final judgment was ordered by her.


James T. Scamby for the plaintiff.
Jeffrey T. Scuteri for Christopher Tilley & another.
Peter C. Kober for Vermont Mutual Insurance Company.


BLAKE, J.  The insureds, Angela Tilley and Christopher

Tilley,[3] owned a dog that caused property damage and injury to

_____

    [1] Angela Tilley and Vermont Mutual Insurance Company.

    [2] Justice Cypher participated in the deliberation of this
case while an Associate Justice of this court, prior to her
appointment as an Associate Justice of the Supreme Judicial
Court.

the plaintiff, Edith Schultz. Schultz filed suit against the Tilleys and the defendant, Vermont Mutual Insurance Company (Vermont Mutual). Vermont Mutual counterclaimed and cross-claimed, seeking a declaration that the homeowner's policy at issue was void as a result of the insureds' material misrepresentations on their application for insurance as to the dog's bite history and their history of loss. Following a bench trial on the issue of coverage only, a judge of the Superior Court agreed with Vermont Mutual on the bite history issue, and accordingly dismissed Schultz's complaint against Vermont Mutual. The Tilleys and Schultz (collectively, the appellants) now jointly appeal.

Background. We summarize the facts as found by the judge, supplemented by undisputed information from the record, with certain facts reserved for later discussion. On December 30, 2010, Christopher visited the Tarpey Insurance Group (Tarpey) in Peabody for the purpose of obtaining homeowner's insurance for his residence in Peabody. With the assistance of Elaine Faithful, one of Tarpey's customer service representatives, Christopher completed an application for insurance with Vermont Mutual. On the application, Christopher responded "Yes" to the question, "Are there any animals or exotic pets kept on

---

[3] For ease of reference, we shall refer to the Tilleys by their first names.

premises?" As a follow-up, the application states, in parentheses, "Note breed and bite history." Under the "Remarks" section of the application, Faithful noted, "American bull dog -- no biting incidents." Another section of the application was entitled "Loss History" and asked, "Any losses, whether or not paid by insurance, during the last 6 years, at this or at any other location?" Christopher responded "No" and placed his initials adjacent to his response. At the bottom of the application, just above the signature line, it states: "I have read the above application and any attachments. I declare that the information in them is true, complete and correct to the best of my knowledge and belief." Christopher signed and dated the application. Vermont Mutual subsequently issued a homeowner's policy to the Tilleys.

On March 18, 2011, Schultz was walking her two Yorkshire Terriers on Harrison Avenue in Peabody. As she was walking near the Tilleys' home, their American Bulldog, Bocephus, ran out and attacked Schultz's dogs. Before Angela and other neighbors could restrain Bocephus, he injured Shultz's dogs. In attempting to protect her dogs from the attack, Schultz suffered a broken arm, a laceration to her face, and scrapes to her knees, elbows, and ankles. On March 21, 2011, Christopher reported the incident to Tarpey, who in turn notified Vermont Mutual.

Following notification of the claim, Vermont Mutual commenced an investigation. During that process, it learned that Bocephus had bitten two other dogs prior to the date of Christopher's insurance application. In particular, Vermont Mutual learned that on November 12, 2009, Bocephus bit a dog named Buddy, who was walking near the Tilleys' house. Buddy's owner filed a police report and spoke with Peabody's animal control officer. Buddy's owner also incurred a $200 veterinarian bill as a result of the bite, which the Tilleys voluntarily paid. In July, 2010, Bocephus bit another dog, Bruno, who also was walking near the Tilleys' house. After confirming that Bocephus was current on his shots, Bruno's owner took no further action. At trial, Christopher acknowledged that he was aware of both of these incidents at the time he applied for insurance in December, 2010.

On July 30, 2013, Schultz filed a complaint in the Superior Court alleging strict liability and negligence on the part of the Tilleys (counts I-IV), and unfair claim settlement practices, in violation of G. L. c. 176D, on the part of Vermont Mutual (count V). On August 26, 2013, Vermont Mutual filed its answer, cross claim, and counterclaim, seeking a declaration against Schultz and the Tilleys that the policy is void and does not afford coverage. In July, 2014, the case was tried on the issue of coverage only. During the trial, the parties

stipulated to the dismissal of count V of Schultz's complaint alleging unfair claims settlement practices against Vermont Mutual, without prejudice.

In written findings of fact and rulings of law, on the basis of the testimony presented and her interpretation of the policy language, the judge concluded that the phrase "biting history" is unambiguous, with the "general understanding of the word [biting] read to mean biting anything or anybody" (emphasis in original). Finding that Christopher had "neglected (either deliberately or by virtue of wilful blindness to the veracity requirement of the application) to answer truthfully that his dog had a biting history," the judge concluded that he had made a material misrepresentation on his application for insurance. As a material misrepresentation is dispositive on the issue of coverage, she ordered that judgment enter for Vermont Mutual on its counterclaim for declaratory judgment. In addition, despite the limited nature of the trial and the prior stipulation, the judge also ordered that judgment enter in favor of Schultz on counts I to IV of her complaint, and in favor of Vermont Mutual on count V of the complaint despite the parties' agreement to dismiss this count.[4]

---

[4] The judge also erroneously found that a Vermont Mutual employee had testified. The parties jointly moved to substitute stipulated language concerning that employee; the judge endorsed the motion as "[s]o noted."

By joint posttrial motion, the parties alerted the judge to the error. As a proposed remedy, they moved for the entry of separate and final judgment, Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974), in favor of Vermont Mutual on its cross claim and counterclaim, and requested a stay pending appeal on Schultz's claims against the Tilleys. In spite of her written endorsement of "[a]llowed" on the motion, the judge ordered the entry of final judgment dismissing Schultz's complaint against Vermont Mutual. This, as we have noted, was despite the prior stipulation dismissing count V against Vermont Mutual without prejudice.

Discussion. On appeal, the appellants argue that the judge erred in finding a material misrepresentation as to the bite history portion of the application. Likewise, they argue, no material misrepresentation was made with respect to the loss history portion of the application. Finally, they argue that the judge erred in ordering the entry of final judgment dismissing count V of Schultz's complaint as against Vermont Mutual. We agree in all respects, addressing each point in turn.

1. Material misrepresentation. In Massachusetts, "[u]nder common-law principles and G. L. c. 175, § 186, when an insured makes a material misrepresentation during the application or renewal period for an insurance policy, the insurer may be able

to deny coverage on that basis."[5]  Commerce Ins. Co. v. Gentile, 472 Mass. 1012, 1015 (2015), citing Barnstable County Ins. Co. v. Gale, 425 Mass. 126, 128 (1997).  See Hingham Mut. Fire Ins. Co. v. Mercurio, 71 Mass. App. Ct. 21, 23-24 (2008) (Mercurio). Here, Vermont Mutual argued that the policy was voidable based on two material misrepresentations made on the application. Before reaching the misrepresentation issue, however, we must examine and interpret the relevant application language, particularly in relation to ambiguity.  In other words, "[i]n order to determine whether an answer is a misrepresentation, we must identify the information sought by the question." Mercurio, supra at 24.  The analysis of policy language is a matter of law, which we review de novo, applying those principles equally to the language of insurance questionnaires and applications.  Ibid.

The "[t]erms of an insurance policy must be interpreted in accordance with the 'fair meaning of the language used, as

---

[5] General Laws c. 175, § 186(a), as amended by St. 2008, c. 376, § 1, provides:

"No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss."

applied to the subject matter.'" Winbrook Communication Servs., Inc. v. United States Liab. Ins. Co., 89 Mass. App. Ct. 550, 556 (2016), quoting from Davis v. Allstate Ins. Co., 434 Mass. 174, 179 (2001). A term or policy provision is ambiguous "only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." Barnstable v. American Financial Corp., 51 Mass. App. Ct. 213, 215 (2001). "If there are two rational interpretations of policy language, the insured is entitled to the benefit of the one that is more favorable to it." Rass Corp. v. Travelers Cos., 90 Mass. App. Ct. 643, 654 (2016), quoting from Hazen Paper Co. v. United States Fid. & Guar. Co., 407 Mass. 689, 700 (1990). "The rationale behind this rule is to encourage insurers, who typically draft the policy and are in the best position to avoid future misunderstandings, to be as clear and explicit as possible. . . . Where a question on an application lends itself to more than one reasonable interpretation, an honest answer to one of those reasonable interpretations cannot be labeled a misrepresentation." Mercurio, supra.

a. Bite history. As we have noted, the application asks about "breed and bite history" as a subpart of the question whether animals or exotic pets are kept on the premises. At trial, Christopher testified that he understood the question, as

Faithful asked it, to mean whether the animal has a history of biting humans, to which he responded in the negative.[6]  Faithful, on the other hand, testified that her custom and practice was to inquire whether the animal was "aggressive" or had "had a biting incident" in responding to the question.  Kathleen Parch, an underwriting manager at Vermont Mutual, testified that she interpreted the term to mean "bodily injury or property damage to someone else's pet."  In reaching her interpretation of the term, the judge adopted a broad meaning advanced by none of the witnesses at the trial, namely that it should be read to mean a history of biting "anything or anybody."

Although we agree with the judge that a fair meaning of the language could be read to mean, literally, anything the animal has ever bitten, that view hardly seems reasonable in the context of insurance given the strong propensity of dogs to chew toys and other inanimate objects of little or no value.  We understand the judge to have meant any living thing.  However, we conclude that the language remains subject to multiple reasonable interpretations, as the trial testimony demonstrates.  Even though our review is de novo, it is notable that each witness who testified on the matter essentially offered a different interpretation of the bite history question.

---

[6] Christopher testified that he did not read the application word for word, but responded to the questions as asked by Faithful.

Moreover, in our view, all of those interpretations are reasonable, in that they each would afford the insurer an assessment, at some level, of the risk associated with a given animal. While listing each and every time a dog has bitten another animal, pet, or dog would certainly provide the insurer with more complete information, such incidents might be common or negligible enough, given the animal, for a reasonable applicant to believe an insurance company would not be interested in such information.[7]

Because the language is ambiguous, we must afford the Tilleys, as the insureds, the benefit of the reasonable interpretation that is most favorable to them; namely, the one that limits the biting history to humans only. Because Christopher answered that question honestly, as it is undisputed that Bocephus had only bitten other dogs, Christopher's response cannot be labeled a misrepresentation by Vermont Mutual. See ibid.

b. Loss history. At trial, Christopher testified that he did not consider the $200 veterinarian bill he paid for Buddy's treatment to be a "loss." Rather, he stated that "a loss is [when] an insurance company pays a claim. It's a loss. You have [a] loss for an insurance company." Parch testified that

_____

[7] It is not difficult to imagine a dog that frequently hunts and catches wildlife, playfully nips another dog, or gets into an occasional scuffle with a neighboring dog.

it was Vermont Mutual's position that the $200 payment was a loss that should have been disclosed on the application.  As with bite history, the appellants argue that the question -- "Loss History -- Any losses, whether or not paid by insurance, during the last 6 years, at this or at any other location?" -- is ambiguous and that, for that reason, Christopher's answer ("No") was not a misrepresentation.

We agree with the appellants that the question is ambiguous, at least as to the lower limit of a loss that must be disclosed in order to avoid a rescission of the policy for misrepresentation.  Setting aside the matter of whether a "loss" means only a "claimed loss" in this context,[8] the question reasonably could be read to mean losses at a threshold level at which an insurance company would be interested in order to accurately assess risk.  See generally 1 New Appleman Law of Liability Insurance § 2.02[1](a), at 2-3 (2d ed. 2010) ("An application generally includes the various information that is necessary for the underwriting of the contract, such as:  . . . the nature of the risk to be insured").  Where that threshold

---

[8] Although we do not reach this question, we again observe the principle that, as the drafter of the language, the burden is on the insurer to tailor the application to elicit the specific information it requires.  See Mercurio, 71 Mass. App. Ct. at 24.  See also Frank vs. Nationwide Mut. Fire Ins. Co., U.S. Dist. Ct., No. 3:04cv0025 (M.D. Tenn. Mar. 28, 2006) (examining whether loss history question in insurance application was ambiguous).

level lies is open to interpretation, and is therefore ambiguous.[9] Given that $200 is a small fraction of the Tilleys' personal liability policy limit,[10] we conclude that Christopher's view that such a payment would not be considered a loss for an insurance company is reasonable. Because, as the insureds, the Tilleys are entitled to the interpretation that favors them, and because it is undisputed that the $200 payment was the only disputed loss, Christopher's response to the loss history question was not a misrepresentation.

2. Final judgment. The appellants correctly observe that the final judgment dismissed count V of Schultz's complaint, which alleged unfair claim settlement practices against Vermont Mutual, despite the parties' earlier stipulation to dismiss that count without prejudice. Because a final judgment on the matter prevents Schultz from reviving this claim as contemplated by the earlier stipulation, we reverse the judge's ruling as an abuse of discretion. See Kobrin v. Board of Registration in Med., 444 Mass. 837, 843 (2005).

Conclusion. The order for judgment, entered November 19, 2014, is vacated, and a new judgment is to enter on Vermont

---

[9] However, in our view, an interpretation that would require disclosure of literally "any losses," however negligible, is not reasonable.

[10] The personal liability policy limit was $500,000 for each occurrence.

Mutual's counterclaim and cross claim declaring that Vermont Mutual is contractually obligated to provide coverage to the insureds. The judgment entered August 3, 2015, pursuant to Mass.R.Civ.P. 54(b) dismissing Schultz's claim against Vermont Mutual is vacated.

<u>So ordered</u>.